# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARY L. BAIRD, II, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-472-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Cary L. Baird, II on November 14, 2017, and on Plaintiff's Opening Brief [DE 19], filed on June 4, 2018. Plaintiff requests that the Court reverse the July 22, 2016 decision of the Administrative Law Judge denying him disability insurance benefits and remand for further proceedings or, in the alternative, for an award of benefits. On June 8, 2018, the Commissioner filed a response. Plaintiff did not file a reply. For the following reasons, the Court grants Plaintiff's request for remand for further proceedings.

## PROCEDURAL BACKGROUND

On June 2, 2014, Plaintiff Cory L. Baird, II filed an application for disability insurance benefits, alleging disability beginning June 2, 2014. The claim was denied initially and on reconsideration. On October 4, 2016, a hearing was held before Administrative Law Judge ("ALJ") Terry Miller. Present at the hearing were Plaintiff, his attorney, his stepmother, and an impartial vocational expert ("VE"). The ALJ issued a written decision on January 25, 2017, concluding that Plaintiff was not disabled based on the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in disqualifying substantial gainful activity since June 2, 2014, the alleged onset date.

3. The claimant has the following severe impairments: a history of type I insulin-dependent diabetes mellitus with recurrent diabetic foot ulcers/Charcot joint disorder, neuropathy, and retinopathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). Although he can stand/walk, in combination, for two hours during an eight-hour workday and sit for six hours throughout the workday, he requires a sit/stand option that allows him to alternate between sitting and standing positions up to every hour, if needed, but the positional change will not render him off task. As to postural changes, he can occasionally climb ramps and /stairs [*sic*], balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes, or scaffolds. With respect to his work environment, the claimant must avoid concentrated exposure to hazards (i.e., operational control of dangerous moving machinery, unprotected heights, and surfaces that are slippery, uneven, and/or moving).

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1983] and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2014, through the date of this decision.

(AR 20-30 (citations omitted)).

Plaintiff then sought review before the Agency's Appeals Council, which denied his request on September 15, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not

whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be

based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because the ALJ erred in finding the VE's methodology reliable and because the ALJ failed to include supported limitations in Plaintiff's RFC.

### A. Vocational Expert's Methodology

Plaintiff asserts that the VE used an unreliable method to determine that jobs that Plaintiff could perform existed in significant numbers in the national economy. Thus, Plaintiff argues, the VE's testimony does not support the ALJ's finding at Step 5 that a significant number of jobs that Plaintiff is able to perform exist in the national economy.

The Commissioner identifies the district court case of *Chavez v. Berryhill*, No. 1:16-cv-314, 2017 WL 3124432 (N.D. Ind. July 24, 2017), as "strongly analogous" to the instant litigation. In that case, the plaintiff's challenge to the ALJ's Step 5 finding was unsuccessful. After the filing of the Commissioner's response brief in this matter, however, the Seventh Circuit Court of Appeals reversed *Chavez*, finding that the VE's use of the equal distribution method was not shown to be reliable. *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). Another district court case cited by the Commissioner as similar to the instant litigation, *Rodriguez v. Berryhill*, No. 1:17-cv-258, 2018 WL 1466289 (N.D. Ind. Mar. 26, 2018), was, after the filing of the Commissioner's response brief in this

matter, remanded by agreement of the parties in light of the Seventh Circuit Court of Appeals' decision in *Chavez*.

As noted above, the burden at Step 5 is on the ALJ. The Step 5 determination is usually made by receiving approximations of job numbers from a vocational expert. *Chavez*, 895 F.3d at 964; *see also* 20 CFR § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used . . . we may use the services of a vocational expert or other specialist."). In the context of Step 5, "the substantial evidence standard requires the ALJ to ensure that the approximation [of job numbers] is the product of a reliable method." *Chavez*, 895 F.3d at 968. The reliability of job-number estimates is not subjected to "an overly exacting standard," "[b]ut any method that the agency uses to estimate job numbers must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Chavez*, 895 F.3d at 968, 969. "If the basis of the vocational expert's conclusions is questioned at the hearing, . . . , then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).

Here, the VE estimated the job numbers using "equal distribution." (AR 91). The VE testified that, for this method, he takes the total number of jobs available in an occupation "group" and then divides that total number by the number of occupations in that group that Plaintiff can perform. *Id.* at 90-91. Plaintiff's attorney objected to the use of this method on the basis that "there's not adequate foundation to make the allocation between the broader group and the – and the specific

7

numbers that he gave." (AR 91). The ALJ asked no questions of the VE regarding the objection, and noted "I'll take it under advisement, but I think he explained it pretty well." *Id.*

The Seventh Circuit Court of Appeals has explicitly not enjoined the use of the equal distribution method and has indicated that a VE "could support the [job-number] approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs." *Chavez*, 895 F.3d at 970. However, a VE's job-number estimates that are derived from the equal distribution method are rightly considered unreliable where "nothing in the administrative record allows [the reviewing court] to conclude with any reliability that the estimates reasonably approximate the number of suitable jobs that exist for [the plaintiff]." *Id.*

The ALJ's handling of this objection is insufficient. As an initial matter, the ALJ did not make any inquiry into the VE's methods. Moreover, the ALJ's reasons for accepting the VE's testimony over the objection are insufficient. In his decision, the ALJ found that the VE "explained the basis for his numbers very well," and the ALJ accepted the VE's testimony because "it is not contradicted and his sources of data are considered reliable in light of his professional qualifications and his familiarity with the rules pertaining to the vocational aspects of the social security disability evaluation process." (AR 30).

All of the provided reasons are problematic. First, though the VE explained the mathematical operations he performed to arrive at the numbers he provided, he failed to explain why he had any amount of confidence that these mathematical operations yielded sufficiently accurate job-number estimates. *See Chavez*, 895 F.3d at 969 ("What is entirely lacking is any testimony from the VE explaining why he had a reasonable degree of confidence in his estimates"). Second, accepting a

VE's estimates because they are not contradicted "effectively and impermissibly" shifts the burden to Plaintiff. *Id.* at 970. Third, neither the VE nor the ALJ provided any explanation regarding how the VE's professional qualifications and familiarity with the relevant rules show the estimates to be reliable. Because nothing in the record permits the Court to conclude that the VE's estimates are reliable, this matter must be remanded.

**B. Residual Functional Capacity**

Plaintiff maintains that the ALJ improperly did not include limitations in Plaintiff's RFC for "excessive absenteeism" due to bad days and medical appointments and breaks for glucose testing and insulin administration.

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts

to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

First, regarding absenteeism due to medical appointments and illness, the ALJ noted Plaintiff's testimony that he usually misses more than three days of work each month due to sickness or appointments. The ALJ compared this data to Plaintiff's treatment records showing that Plaintiff received treatment on four days in June 2016, one day in July 2016, and only day in August 2016. Plaintiff's argument on this matter is threadbare and does little more than restate Plaintiff's testimony. Plaintiff does not argue that the ALJ's discussion of Plaintiff's testimony and comparison to the treatment records is insufficient or provide any other basis for the challenge. The Court will not find and develop arguments for Plaintiff. In light of the need for remand based on the Step 5 error above, no further analysis of this challenge is warranted.

Though Plaintiff maintains that the ALJ "cherry-picked" from the record in rejecting a portion of Plaintiff's testimony as inconsistent with medical records, this is not cherry-picking. Cherry-picking is ignoring portions of the record unfavorable to the ALJ's decision. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). Here, the ALJ addressed Plaintiff's testimony. It is not "cherry-picking" to find some portions of testimony less credible than others.

Plaintiff also argues that the ALJ did not include a limitation Plaintiff has regarding a need for additional breaks in the workday. The evidence that Plaintiff cites to support breaks for glucose

testing eight times a day and insulin administration seven times a day do not, on their face, support such a limitation. Plaintiff cites pages 763 and 766 of the administrative record. Page 763 does list "FreeStyle Lancets Miscellaneous; TESTING 4 TIMES DAILY" and "FreeStyle Test In Vitro Strip; TEST 4 TIMES DAILY," but the next page lists the treatment plan as "check blood sugars before each meal and at bedtime." (AR 763-64). Plaintiff does not explain or point to evidence to show that the glucose testing could not be accommodated by normal meal breaks. Likewise, though injections are a part of Plaintiff's treatment plan, the evidence presented does not provide the Court a basis on which to determine that Plaintiff showed a need for excess breaks during the workday for insulin administration that was impermissibly ignored by the ALJ. Page 766 of the administrative record provides no additional clarifying information on this issue. Plaintiff has not shown a basis for remand regarding breaks for glucose testing and insulin administration.

### C. Request for Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Opening Brief [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter

for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 9th day of October, 2018.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT